IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EBONY CHAMBERS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **Civil Action** |
| v. | : | **No. 23-137** |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CITY OF PHILADELPHIA, BLANCHE CARNEY, NANCY GIANETTA, EDWIN CRUZ, AND JESSICA BOWERS'S MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**CITY OF PHILADELPHIA
LAW DEPARTMENT**

DANIELLE B. ROSENTHAL, ESQUIRE
Attorney ID No. 329676
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
P: (215) 683-5448

*Attorney for the City of Philadelphia,
Blanche Carney, and Edwin Cruz*

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

JOHN P. GONZALES, ESQUIRE
JOSHUA W. BROWNLIE, ESQUIRE
Attorney ID Nos. 71265; 330511
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2871/2658
F: (215) 575-0856

*Attorneys for Nancy Giannetta and Jessica
Bowers*

Pursuant to this Court's Policies and Procedures, Defendants the City of Philadelphia (the "City"), Blanche Carney, Nancy Gianetta, Edwin Cruz, and Jessica Bowers, by and through their undersigned counsel, respectfully submit the following Joint Reply in further support of their Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim.

## I.        THE COURT SHOULD DISMISS PLAINTIFFS' *MONELL* CLAIM.

As explained at length in Defendants' opening brief, Plaintiffs have failed to define the alleged policy, practice, or custom with requisite specificity. *See* Br. at 5-8. To the extent that Plaintiffs suggest that precedent does not require Plaintiffs "to identify a [specific] custom, policy, or practice to survive a motion to dismiss," Opp. Br. at 7, they are wrong. *See, e.g.*, *Harper v. Cty. of Del.*, 779 Fed. App'x 143, 147 (3d Cir. 2019 (affirming dismissal to the lack of identification of "any specific policies"); *Wood v. Williams*, 568 Fed. App'x 100, 104 (3d Cir. 2014) (affirming dismissal of "*Monell* claim because [the plaintiff's] complaint failed to identify any unlawful policy or custom and failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged"); *Villarreal v. New Jersey*, 803 Fed. App'x 583, 588 (3d Cir. 2020) ("Villarreals failed to identify any specific policy, procedure, or custom of the Board of Freeholders to support a § 1983 claim against a local government . . . .").

Further, to the extent that Plaintiffs incorrectly insist that courts have endorsed "similarly capacious customs, policies, or practices," Opp. Br. at 4, Plaintiffs fail to cite even a single case where a similar alleged custom of failing to respond adequately to any medical emergency, no matter the type or reason, has passed muster at the motion to dismiss stage after thorough consideration.[1] Indeed, courts have repeatedly held that policies and practices far more similar than

---

[1] Instead, Plaintiffs focus on entirely inapposite authority, such as the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which involved a specific facially unconstitutional policy bearing no resemblance to the instant case. *See* Opp. Br. at 4. Further, despite criticizing Defendants for citing cases adjudicating motions for summary

those in Plaintiffs' cited case examples are insufficient specific to survive a motion to dismiss. *See, e.g.*, *Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 436 (E.D. Pa. 2015) (holding that allegations of "failure to provide sufficient emergency medical care," constituted "'vague assertions' of policy or custom," which were "not sufficient to impose liability"); *Arita v. Wexford Health Sources, Inc.*, No. 15-cv-01173, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) ("Nor does Arita's complaint shed any light on what Wexford's alleged policy might be— that is, what specific policy might lead to the systematic disregard of inmates' medical needs.").

Further, the only precedential case on which Plaintiff rely for the incorrect proposition that "there is no mandate that Plaintiff identify a custom, policy, or practice to survive a motion to dismiss," Opp. Br. at 7, is *Carter v. City of Philadelphia*, 181 F.3d 339, 357-58 (3d Cir. 1999), which predates the Supreme Court's decisions in *Twombly* and *Iqbal*. Although Plaintiffs also cite to *Kenney v. Montgomery County*, Opp Br. at 7, Judge DuBois explained that the *Kenney* plaintiff *did* allege an underlying policy aside from a nebulous general denial of medical care. No. 13-cv-2590, 2013 WL 5356862, at *7 (E.D. Pa. Sept. 25, 2013) (noting specific factual allegations underlying alleged policy of denying medical care for cost-savings reasons). And in doing so, Judge DuBois noted that Plaintiffs just "barely" crossed the requisite pleading threshold, *id.* (internal quotation marks omitted), which Plaintiffs fail to do here.[2]

---

judgment, even where appropriate, Plaintiffs rely at length on cases with entirely different procedural postures even where Defendants' criticisms focus on the specificity of the allegations required at the motion to dismiss stage. *See* Opp. Br. at 4-5 (discussing *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996) & *Bielevicz v. Dubinon*, 915 F.2d 845 (3d Cir. 1990)).

[2] Indeed, Judge DuBois repeatedly reaffirmed in subsequent cases that a plaintiff must identify a specific custom, policy, or practice at the pleading stage. *See, e.g.*, *Seagraves v. Phila. Police Dep't*, No. 16-cv-1219, 2016 WL 2735679, at *3 (E.D. Pa. May 11, 2016); *Thomas v. City of Chester*, No. 15-cv-3955, 2016 WL 1106900, at *4 (E.D. Pa. Mar. 21, 2016). Plaintiffs' other citations are similarly unavailing. For instance, Plaintiffs' selectively excerpted quotation from *Moore v. Ryan*, Opp. Br. at 7, is immediately followed by the recognition that a plaintiff must provide "some specificity as to the custom, policy, or procedure which caused the plaintiff's

Just as misguided is Plaintiffs' notion that specific training, supervisory, and disciplinary deficiencies need not be alleged. *See* Opp. Br. at 11. Any suggestion otherwise is again inconsistent with precedent. *See, e.g.*, *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) ("Similar to the policy claim, a failure to train claim requires a plaintiff to 'identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur.'" (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991))); *Blacknall v. Citarella*, 168 Fed. App'x 489, 492 (3d Cir. 2006) (citing cases).

In attempting to explain away Defendants' abundant authority,[3] Plaintiffs erroneously focus on the fact that two cases cited by Defendants in their briefing, *Reitz v. Cty. of Bucks*, 125 F.3d 139 (3d. Cir 1997) and *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 2015 (3d Cir. 2001) arose in the context of motions for summary judgment. *See* Opp. Br. at 11-12. This is a red herring, as Defendants opening brief specifically noted another court's citation to these cases in ruling on a motion to dismiss. *See* Br. at 7. Countless other courts,[4] including the U.S. of Appeals for the Third

---

injuries." No. 12-cv-1875, 2013 WL 1339053, at *7 (M.D. Pa. Apr. 1, 2013). And in *Peet v. Beard*, *see* Opp. Br. at 7, the plaintiffs alleged a far more specific policy, practice, or custom than that of general deliberate indifference to all emergent medical needs: "fail[ing] to have an adequate protocol in place to protect inmates who suffer from epileptic seizures." No. 10-cv-482, 2011 WL 718723, at *7 (M.D. Pa. Jan. 25, 2011), *report and recommendation adopted,* No. 10-cv-482, 2011 WL 720192 (M.D. Pa. Feb. 22, 2011).

[3] Further, Plaintiffs' assertion buried in a footnote that "[c]uriously, two of the cases the City cites actually undermine its argument — and support Plaintiff[]," Opp. Br. at 6 n.3, is specious, as Plaintiffs blow past the legal propositions for which these cases are cited. That the allegations in those cases were sufficient to state a claim — for instance, the allegations in *Moore v. Ryan*, No. 12-cv-1875, 2013 WL 1339053, at *7 (M.D. Pa. Apr. 1, 2013) that identified a *specific* training deficiency (the failure to "adequately train officers regarding the proper use of police dogs") — says nothing about the propriety of Plaintiffs' allegations in this case, which are not.

[4] *See, e.g.*, *Harriell v. Cuzzupe*, No. 12-cv-0604, 2023 WL 2583468, at *3 (D.N.J. Mar. 21, 2023); *McLaughlin v. Cunningham*, No. 13-cv-01926, 2014 WL 1225935, at *11 (E.D. Pa. Mar. 25,

Circuit, similarly have applied these cases' holdings to Rule 12(b)(6) motions. *See, e.g.*, *Hatfield v. Berube*, 714 Fed. App'x 99 (3d Cir. 2017).

Rather than focus on substantively distinguishing Defendants' cases in a meaningful manner, Plaintiffs rely on cases involving entirely different and far more specific allegations. For instance, Plaintiffs place undue emphasis on Judge Ambro's opinion in *Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019). Critical to the *Roman* court's decision was a seventy-eight page highly detailed consent decree, properly considered as integral to the allegations in the complaint. *Id.* at 797-98; *see also* Exhibit A (consent decree). Unlike here, that consent decree addressed patterns of misconduct closely paralleling the violations alleged in that plaintiff's case as well as spoke to the specific alleged deficiencies and required reforms, such as in the areas of training and supervision. *Id.* at 99 (explaining that the consent decree "cover[ed] the same type of conduct [the plaintiff] allege[d]" and addressed particular training, supervision, and discipline deficiencies). *Roman* thus has no application here. Further, despite Plaintiffs' contention to the contrary, Opp. Br. at 6, *Roman* hardly *sub silentio* overruled earlier appellate precedent addressing far less detailed *Monell* allegations — nor could it absent an *en banc* decision by the entire court.

Finally, that Plaintiffs cite a five-page interim partial settlement agreement in the *Remick v. City of Philadelphia* litigation, which includes no detailed deficiencies or defects in training, supervision or discipline, does not at all make the two cases analogous. *See, e.g.*, Opp. Br. at 9. As an initial matter, Plaintiffs mischaracterize the agreement in framing it as geared towards correctly general deficiencies in medical care and in responding to medical emergencies.[5] As the settlement

---

2014); *Joobeen v. City of Phila. Police Dep't*, No. 09-cv-1376, 2010 WL 844587, at *4 (E.D. Pa. Mar. 4, 2010); *Mathews v. Abington Heights Sch. Dist.*, No. 22-cv-00959, 2023 WL 2601917, at *9 (M.D. Pa. Mar. 22, 2023).

[5] For purposes of Plaintiff's supervisory liability claims, it also bears noting that Commissioner Carney was not a party to the agreement, as she was sued in her official capacity.

agreement clearly states, its intention was to "reduce the introduction and transmission of COVID-19 in its facilities, the PDP's commitment to continue these practices, as well as recommendations for COVID-19 mitigation made by Plaintiffs' counsel." Exhibit B (Consent Order on Partial Settlement Agreement) at 2. Further, the text of the agreement made clear that the provisions were not intended to identify deficiencies but rather "reflect[ed] the *current protocols at PDP*," and thus codified what was already in place. *See id.* (emphasis added). This was true too of the provisions related to medical care, which were plainly geared towards addressing the location of services during the unprecedented COVID-19 pandemic rather than suggestive of a custom of ignoring emergent medical needs. *See id.* ¶ I(A)(4) ("*Continuing to ensure access to necessary services . . . .*"). Reliance on this agreement to compensate for absent allegations fails.

### A. Plaintiffs Have Failed To Allege Similar Incidents To Establish the Existence of a Causally Connected Widespread Unconstitutional Custom.

For the reasons set forth in Defendants' opening brief, Plaintiffs have failed to allege sufficiently similar and numerous incidents from which one could plausibly infer the existence of a specific custom causally connected to the alleged violation at issue or one that put policymakers on notice of any deficiency of a likely violation of Mr. Chambers's constitutional rights.

In once again relying heavily on *Estate of Roman v. City of Newark*, 914 F.3d 789, which involved plausible allegations of highly discrete systemic failures, obviating the need for similar case examples from which to plausibly infer an unlawful custom, Plaintiffs entirely ignore the lack of any apparent relationship between Mr. Chambers's case and the other incidents they cite. These incidents fail to provide any hook from which it is possible to infer a common policy or practice that could be the direct cause or moving force behind such disparate failures. *City of Okla. City v. Tuttle*, 471 U.S. 808, 814 (1985); *see also, e.g.*, *Postie v. Frederick*, No. 14-cv-00317, 2015 WL 7428616, at *4 (M.D. Pa. Nov. 23, 2015) ("Postie fails to explain how these four

lawsuits are "similar" to his own case for the purpose of imputing a pattern of violations."); *Carmody v. Ensminger*, No. 16-cv-02603, 2017 WL 4150601, at *5 (D. Colo. Sept. 19, 2017) ("Plaintiff identifies numerous incidents where she alleges prison officials and CCS Defendants have previously failed to provide medical care to inmates with serious medical needs, but there is no apparent relationship between these incidents from which it is possible to infer a common policy or practice that could be the "'direct cause' or 'moving force' behind such disparate failures to provide medical care.").

Plaintiffs also incorrectly suggest that case law does not require a high degree of similarity in making out a *Monell* claim. In *Connick v. Thompson*, 563 U.S. 51 (2011), for instance, the U.S. Supreme Court considered a § 1983 claim brought by a plaintiff who was wrongfully imprisoned for eighteen years after a district attorney's office failed to disclose exculpatory evidence in compliance with its *Brady* obligation.[6] In seeking to hold the relevant policymaker liable for the district attorney's conduct, the plaintiff alleged that the policymaker "failed to train his prosecutors adequately about their duty to produce exculpatory evidence." *Id.* at 54. Although the plaintiff pointed to four judicially confirmed previous *Brady* violations to show that policymakers were on notice of the need for more training, the U.S. Supreme Court held that these prior violations were too dissimilar to the incident at issue, as "[n]one of those cases [similarly] involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *Id.* at 62–63. Accordingly, they "could not have put [the policymaker] on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue [t]here." *Id.* at 62.

---

[6] To the extent that Plaintiffs may seek to argue that *Connick* did not reach the Supreme Court in the context of a motion to dismiss, that is a distinction without a difference. Courts routinely cite *Connick* and other such precedent in Rule 12(b)(6) decisions. *See, e.g.*, *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020); *Haberle v. Troxell*, 885 F.3d 170, 182 (3d Cir. 2018); *Owens v. Coleman*, 629 Fed. App'x 163, 167 (3d Cir. 2015).

Similarly, here, Plaintiffs' alleged incidents do not conform to any systemic pattern from which it is possible to infer any underlying policy or practice is the cause. For example, there is no apparent connection between an inmate who was harmed by the absence of guards to respond to an emergency call button and the allegation that Mr. Chambers did not receive necessary care because prison officials specifically ignored requests that he be taken to the infirmary. Plaintiffs' claim thus is, in effect, an assertion that all failures to provide adequate medical care, to those with emergent needs, no matter the differences in circumstances, result from a common policy or practice. But such allegations do little more than restate the elements of a deliberate indifference policy claim and provide no basis to attribute causation in any particular incident. *See, e.g.*, *Terry v. Cty. of Milwaukee*, No. 17-cv-1112, 2018 WL 2567721, at *7 (E.D. Wis. June 4, 2018); *Burns v. Rensselaer Cnty.*, No. 19-cv-00701, 2021 WL 1091558, at *8 (N.D.N.Y. Mar. 22, 2021); *Sanchez v. N.Y. Correct Care Sols. Med. Servs., P.C.,* No. 16-cv-6826, 2018 WL 6510759, at *11 (W.D.N.Y. Dec. 11, 2018). Accordingly, these allegations are insufficient.

**B.      Plaintiffs Have Not Alleged Deliberate Indifference on the Part of a Final City Policymaker.**

In attempting to distract Defendants' well supported argument that Plaintiffs have failed to allege deliberate indifference on the part of a final city policymaker, Plaintiffs first erroneously spill much ink on whether the "deliberate indifference" standard, Opp. Br. at 19, applies to a *Monell* claim predicated on an allegedly unconstitutional custom. First, in discussing *Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019), Plaintiffs gloss over the that *Parry*'s cited language applies where there is an alleged policy or custom predicated on a municipality's *affirmative* act, *id.* at 106, of which Plaintiffs have alleged none. Here, every iteration of Plaintiffs' *Monell* claim is premised on *failures* to take actions to ensure medical needs are met. *See, e.g.*, Am. Compl. ¶¶ 141-43. Accordingly, the quoted *Parry* language is irrelevant to Plaintiffs' articulated *Monell* claim.

Moreover, even if Plaintiffs were not required to allege deliberate indifference under a straightforward unconstitutional custom theory,[7] Plaintiffs have woefully failed to allege "a given course of conduct so well-settled and permanent as to virtually constitute law."[8] *Parry*, 930 F.3d at 106. Although Defendants submit that Plaintiffs have not alleged sufficient facts to allege a *single* other similar violation of an incarcerated individual's constitutional rights, it is hardly plausible that the City's fails to respond to medical emergencies of its entire inmate population is "so well-settled and permanent as to virtually constitute law." *Id.* Indeed, Plaintiffs refuse to even address Defendants' argument that Plaintiff have failed to allege sufficiently numerous incidents to constitute a custom. *See* Opp. Br. at 17 n.13. Accordingly, this argument is waived.[9] *See Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011).

Finally, in spending significant briefing discussing whether subsequent conduct can be relevant to a *Monell* claim, Plaintiffs conflate various theories and confuse the purpose for which

---

[7] Further, deliberate indifference would still be required under any "failure to" theory, such as a failure to train, supervise, or discipline. As Plaintiffs fail to meet the pleading standards with respect to any of these theories, they should at minimum be dismissed, even if the Court disagrees with Defendants and holds that an unconstitutional custom theory should survive. *See, e.g.*, *Clayton v. City of Newark*, No. 11-cv-289, 2021 WL 6062342, at *1 (D.N.J. Dec. 22, 2021) ("prun[ing] back the complaint by dismissing as facially deficient certain *Monell* sub-theories").

[8] Rather than meaningfully engaged with Defendants' cited case law, Plaintiffs attempt to distract from their lack of well pled allegations by focusing on the fact that one Defendants' cited cases, *Subher v. City of Phila.*, No. 22-cv-0601, 2022 WL 17573402 (E.D. Pa. Dec. 9, 2022), involved a common individual defendant. *See* Opp. Br. at 18. Not only are such allegations irrelevant to Plaintiffs' *Monell* claim, but their assertion that "[t]he Court can, and should, consider th[ese additional allegations]," Opp. Br. at 18, is squarely foreclosed by precedent. *See Com. of Pa., ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[9] Plaintiffs' characterization of Defendants' briefing as conceding the irrelevance of the number of cited incidents is disingenuous and should be disregarded. *See* Opp. Br. at 17 n.13. It is illogical that Defendants would have spent over half a page of briefing citing cases exclusively addressing the requisite number of alleged similar incidents had this in fact been Defendants' position. *See* Br. at 10-11. Indeed, the mere fact that Plaintiffs felt the need to address this supposed "implicit concession" suggests that Plaintiffs very well understood this issue to be at play.

such evidence can be considered. Although courts have in certain cases considered such evidence in determining the existence of an unconstitutional custom, post-incident conduct *cannot* be considered for purposes of establishing deliberate indifference — i.e., that policymakers were on notice of a particular deficiency (such as a failure to train, discipline, or supervise) likely to result in a violation of constitutional rights. *See, e.g.*, *Sallie v. Lynk*, No. 10-cv-456, 2012 WL 995245, at \*10 (W.D. Pa. Mar. 23, 2012),

## II.     THE COURT SHOULD DISMISS PLAINTIFFS' SUPERVISORY CLAIMS.

In failing to counter Plaintiffs' well supported arguments for dismissal of the supervisory-liability claims against the moving defendants, Plaintiffs first disregard the pleading standards, pointing to "the essential role of fact discovery." Opp. Br. at 22. But any assertion that the sufficiency of allegations for supervisory-liability claims cannot be decided at the pleadings stage is squarely foreclosed by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Indeed, the *Iqbal* Court strongly cautioned courts to address the sufficiency of allegations at the outset of a case, particularly where the complaint alleges "threadbare recitals" and "mere conclusory statements." *Id.* at 678. It further noted this is particularly important in cases against governmental officials, as "[l]itigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable [governmental] time and resources." *Id.* at 686.

Plaintiffs also entirely miss the mark in spending pages of briefing focusing on the uncontroverted proposition that a supervisory defendant conceivably can be held liable if they personally participated in promulgating and enforcing an unconstitutional policy or practice that caused the violation at issue. *See* Opp. Br. 23-27. Defendants do not contend otherwise.[10] Rather,

---

[10] For this reason, Plaintiffs' cases that fail to address the requirement of non-conclusory allegations at the pleading stage are inapposite to the analysis. Further, to the extent that the U.S. Court of Appeals for the Third Circuit stated in its overturned decision in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *judgment rev'd sub nom. Taylor v.*

they contend that such allegations may not be merely conclusory and group-like, resting simply on a failure to take unspecified action by virtue of their titles and presumed roles. In fact, Plaintiffs' own cases illustrate this point. For instance, although Plaintiffs cite *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011), for the proposition that "[i]t is . . . possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior," *id.* at 72 (internal quotation marks omitted), Plaintiffs do not discuss the remainder of the case affirming dismissal on the ground that "pleading contained boilerplate allegations mimicking the purported legal standards for liability, which [the court could] not assume to be true," *id.* at 74; *see also id.* at 75 (agreeing "with [the defendants'] assertion that Plaintiffs themselves did not really identify in their pleading what exactly Appellants should have done differently"). The same applies in this case.

Just as in *Argueta*, in asserting that they have alleged non-conclusory allegations as to each individual defendant's involvement and liability, Plaintiffs simply regurgitate their conclusory allegations regarding general awareness of prior incidents, deliberate indifference, general policymaking authority, and unspecified group failures to train, supervise, and discipline. *See, e.g.*, Opp. Br. at 26-29. It is precisely these boilerplate types of group-like assertions that have been rejected by the courts.

Date: April 10, 2023                                    Respectfully submitted,


**CITY OF PHILADELPHIA**                    **MARSHALL DENNEHEY WARNER**
**LAW DEPARTMENT**                          **COLEMAN & GOGGIN**

---

*Barkes*, 575 U.S. 822 (2015), that the "the standard we announced in *Sample* . . . is consistent with *Iqbal*," it was not referencing *Iqbal*'s holding with respect to requiring non-conclusory factual allegations, as *Sample* was not decided on a motion to dismiss. *Id.* at 320.

By: */s/ Danielle B. Rosenthal*
DANIELLE B. ROSENTHAL, ESQ.
Deputy City Solicitor
Attorney ID No. 329676
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
P: (215) 683-5448

*Attorney for the City of Philadelphia, Blanche Carney, Nancy Gianetta, and Edwin Cruz*

By: */s/ Joshua W. Brownlie*
JOHN P. GONZALES, ESQUIRE
JOSHUA W. BROWNLIE, ESQUIRE
Attorney ID Nos. 71265; 330511
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2816

*Attorneys for Nancy Giannetta and Jessica Bowers*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| EBONY CHAMBERS, et al., | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Civil Action** |
| v. | : | **No. 23-137** |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I certify that on this date, a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of the City of Philadelphia, Blanche Carney, Nancy Gianetta, Edwin Cruz, and Jessica Bowers's Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim was filed via the Court's electronic filing system and is available for viewing and downloading.

Date: April 10, 2023

Respectfully submitted,

 */s/ Danielle B. Rosenthal*
Danielle B. Rosenthal
Deputy City Solicitor
PA Bar No. 329676
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5448
danielle.rosenthal@phila.gov